# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELMA ANN BUCHANAN,<br><br>    Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | 1:08cv1991 GSA<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Elma Ann Buchanan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] Both parties consented to the jurisdiction of the United States Magistrate Judge for all purposes. The Court notes that Defendant erroneously filed a Notice of Lodging Administrative Record as its Opposition to Plaintiff's Opening brief. (Doc. 15). However, on the next day, Defendant properly filed its Opposition and requested that Document 15 be stricken from the record. (Docs. 16 and 17). Accordingly, Document 15 is stricken from the record.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on or about March 10, 2005, alleging disability since October 1, 2002. AR 57-65 . Her application was denied initially and on reconsideration. AR 28-32; 34. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 44. ALJ Laura Havens held a hearing on September 13, 2006, and issued an order denying benefits on March 8, 2007. AR 260-268; 310-331. On August 9, 2007, the Appeals Council vacated the decision and remanded for further proceedings. AR 269-270. On November 8, 2007, ALJ Havens held another hearing in Stockton, California. Plaintiff appeared and testified and was represented by counsel. AR 332-354. On March 10, 2008, ALJ Havens issued an order denying benefits. AR 15-25. On November 4, 2008, the Appeals Council denied review. AR 6-9.

<u>Hearing Testimony</u> [3]

ALJ Havens held a hearing on November 8, 2007, in Fresno, California. Plaintiff appeared and was represented by attorney Joel Roberts. Vocational Expert ("VE") George Meyers also testified. AR 332-354.

Plaintiff was born on December 18, 1955. AR 337. She completed high school and three years of college. AR 337. She is five feet three inches tall and weighs 226 pounds. AR 345. She is able to read the newspaper and do simple adding and subtracting. AR 313, 345. She suffers from chronic neck pain, neuralgia and cervialgia. Plaintiff's past relevant work does not amount to substantial gainful activity so there is no past relevant work. AR 337.

Plaintiff currently lives in an apartment with her two children who are fifteen and seventeen years old. AR 315; 339. Plaintiff wakes up at about 5:00 a.m. and dresses and bathes herself without assistance. AR 339. However, she suffers from depression and sometimes will stay in her pajamas all day. AR 349-350. She does not do cooking, mopping, vacuuming, or

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The summary of the hearing testimony includes Plaintiff's testimony at both the September 13, 2006 and the November 8, 2007 hearings.

2

laundry. AR 316, 339.  At times, Plaintiff goes grocery shopping at Safeway with her neighbor. AR 339, 348.   However, she is unable to go most public places because she doesn't like closed doors and she is afraid that something will happen to her.  AR 347-349.

Plaintiff does not exercise but she has a driver's license and currently drives.  AR 316; 340.  However, she is only able to drive short distances because she gets worried that something will happen and she will not be able to make it home.  AR 347.  She is unable to ride in a car as a passenger because she feels locked in. AR 347.  She also cannot take public transportation.  AR 347.

Plaintiff testified that she suffered a stroke in 2006 or 2007.  AR 338.  As a result, her face is twisted and her mouth draws back on the right side down toward her back.  AR 344.  She is unable to remember things and is unable to recall words during conversations.  AR 345.

Plaintiff has difficulty eating due to pain in her jaw and her teeth.  AR 341.  She is unable to sleep through the night and gets up frequently.  AR 341.  On average, she is able to sleep three to four hours a night.  AR 341. She frequently takes naps throughout the day.  AR 347-348.

Plaintiff goes to her doctor, Dr. Krishnamoorthi, approximately two times a month.  AR 341-342. She was also going to the Women's Haven Center and seeing Miranda Palmer for mental health issues.  AR 341-342.  She has depression and suffers from frequent crying spells. AR 350.  She was told by her psychiatrist that there is nothing that can be done for her condition other than to take medication and she has not gone back to him since that time.  AR 350.

Plaintiff takes Baclofen for muscle spasms, Loratadine for allergic reactions, and Meclazine for nausea. AR 19; 302; 342.  The Baclofen helps with facial pain but bothers her stomach and makes her tired so that she cannot do anything.  AR 232; 342.  She also has taken Tylenol for pain but often no medications help.  AR 322-324.   Plaintiff has had allergic reactions to some medications, but did not report any allergic reaction to her current medication regimen. AR 318-319; 342.  Plaintiff is able to walk for about five minutes but suffers from dizziness.  AR 343.  She can only sit for one hour due to problems with her knees.  AR 343.  She is not able to lift five pounds.  AR 343.

Plaintiff suffers from chronic headaches and the pain travels to her face, neck, shoulders, and down to her right arm, leg, and foot. AR 320; 326; 343. When these episodes occur, it feels as if someone is shocking or zapping her. Later, the sensation feels as if someone is stabbing her resulting excruciating pain. AR 322. This pain occurs all of the time and will be triggered by talking on the telephone, by someone touching her face, or by air conditioning. AR 321; 322; 346. The episodes occur at least once a week and they can last for hours or sometimes for three to four days. AR 327-328.

In addition, Plaintiff's right foot feels like it is broken. AR 344. She also experiences pain in both of her knees which prevents her from walking up the stairs. AR 344. On a scale of one to ten, Plaintiff reported that her pain is a ten. AR 328; 344. She experiences pain everyday including a sharp pain in her temples. AR 322; 345. When this occurs she in unable to lay down so she sits in a chair shaking and is unable to talk. AR 321; 346. On a good day Plaintiff is able to lay down in her room and talk on the phone with her friends. AR 346. She has three "good" days a month. The rest of the days are bad. AR 346.

The VE was asked to consider hypothetical questions posed by the ALJ. First, the VE was asked to assume a forty-seven year old individual with a high school diploma and three years of college with no past relevant work. AR 351. This individual has the ability to sit, walk, and stand for six hours out of an eight hour day, can occasionally lift and carry twenty pounds, and can frequently carry ten pounds. AR 351. However, this person is not able to perform overhead or over the shoulder reaching. AR 351. The VE opined that such an individual would be able to perform work in the national economy including : 1) an assembler of small parts which is light unskilled work, 2) office help, which is light unskilled work, and 3) a charge account clerk which is sedentary, unskilled work. AR 351. There are 51,000, 18,000, and 4,000 of those jobs available in California respectively. AR 352.

Next, the VE was asked to consider the same individual with the ability to sit for two hours out of an eight hour day, stand for four hours out of an eight hour day, and walk for four hours out of an eight hour day. AR 352. This individual can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and can only occasionally climb stairs. AR 352.

4

The VE opined that such an individual would be able to perform work in the national economy including:1) a storage rental clerk, which is light unskilled work, 2) office help which is light unskilled work, and 3) a survey clerk, which is light unskilled work. AR 351. There are 10,000, 26,000, and 8,000 of those jobs available in California respectively. AR 352. The VE noted that he was deviating from the Dictionary of Occupational Titles ("DOT") based on his twenty years of experience and numbers from the U.S. Census Bureau. AR 352.

When the VE was asked by Plaintiff's attorney to assume a hypothetical in which the individual could sit, stand, and walk six hours out of an eight hour day but suffers from facial pain and/or headaches and/or cervical pain that would result in absences at least three days a month, the VE reported that no jobs exist. AR 352, 353. Finally, when Plaintiff's attorney asked the VE to assume a hypothetical in which the individual could sit, stand, and walk six hours out of an eight hour day but would have to take naps twice a day for at least thirty minutes an hour due to lack of sleep, facial pain, or depression, the VE reported that there would be no jobs available. AR 353.

Medical Record

Beginning approximately January 2003, Plaintiff was seen at Sutter Gold Medical Center for complaints of facial and neck pain. AR 182, 198. She was diagnosed with trigeminal neuralgia in October 2003, obesity in December 2004, and dizziness and giddiness as of June 2002. AR 175,185.

Plaintiff sought a second opinion from Dr. James Smith, M.D. at the Gould Medical Foundation in January 2004, AR 178-179. Plaintiff complained of excruciating pain in her face that lasted for seventeen hours after the wind brushed her face. AR 178. Dr. Smith found "a complex constellation of symptoms" and concluded that Plaintiff probably had atypical trigeminal neuralgia. AR 179.

In March 2005, Plaintiff was assessed by Dr. Lee, M.D. when she complained of chest pain. AR 150-151. She was diagnosed with anxiety and prescribed medication. AR 15-155. On April 25, 2005, Plaintiff was seen again by Dr. Lee and complained that she had difficulty coming up with words when she was anxious, however, Dr. Lee noted no difficulty. AR 146.

Plaintiff stated she was not having difficulty because she was comfortable with the doctor. AR 146.

On May 7, 2005, Dr. Rosalinda Serrano, M.D. performed a consultative neurological evaluation at the state agency's request. AR 124-128. Plaintiff complained of face pain, dizziness, and depression. AR 124-128. Dr. Serrano found that Plaintiff was neurologically intact and that she had intact motor strength, sensation, and reflexes. AR 127. Doctor Serrano also found that Plaintiff was able to sit, stand, and walk eight hours during an eight hour work day, could frequently lift ten pounds, and could occasionally lift twenty pounds. No additional postural, manipulative, visual, communicative or environmental limitations were suggested except that because of trigeminal neuralgia, and dizziness, the Plaintiff was unable to work at heights or operate machinery. AR 127-128.

On May 13, 2005, Dr. Manolito Castillo, M.D., a state agency psychiatrist, performed a consultative mental status examination during which Plaintiff reported that she had depression since 1986 and trigeminal neuralgia since 2003. AR 130. Plaintiff described dizziness which lasted three days, excruciating facial pain triggered by light touch or a mind breeze, and panic attacks. AR 130-131. Plaintiff described her daily activities as cooking, shopping, lying in bed, taking her children to school, driving, caring for her personal needs, people watching at the park, and handling her finances. AR 133. Plaintiff was fully oriented and had appropriate mood and organized thought process. AR 133. Dr. Castillo diagnosed Plaintiff with major depressive disorder, panic disorder, and claustrophobia, all by history. Dr. Castillo reported that Plaintiff "did well on assessment" and was unable to identify any significant mental limitations. AR 133.

On May 19, 2005, Plaintiff was examined by Dr. Bruce Gesson, M.D. and he also provided treatment to Plaintiff through late 2006. AR 246, 247. Dr. Gesson reported that x-rays showed degenerative changes in Plaintiff's cervical spine and he recommended trigger point injections. AR 246-247. Epidural steroid injections were administered but provided only short term relief. AR 249. On June 30, 2005, Dr. Gesson opined that Plaintiff was not going to go back to work and would have to go on permanent disability. AR 249; 255. Plaintiff's

medications as of June 2005 were Lorazepam for anxiety, Meclizine for dizziness, and Tylenol for pain. AR 20; 249.

On May 23, 2005, Dr. Antoine Dipsa M.D., a state agency physician, reviewed the record and opined that Plaintiff could perform light work. AR 226-227. On May 31, 2005, Dr. V. Meenakshi, M.D., a state agency psychiatrist, also reviewed the record and opined that Plaintiff did not have a severe mental impairment. AR 135-139.

Plaintiff was treated by Dr. Brji Gupta, M.D. from July 19, 2005 through September 21, 2006. AR 238-245. On July 19, 2005, Plaintiff reported persistent headaches and trigeminal neuralgia as well as an allergic reaction to Lorezepam. AR 238. On October 31, 2005, Plaintiff reported pain in both of her hands as well as in her lower back. AR 239. She reported having difficulty standing and having headaches frequently. AR 239. By November 11, 2005, Plaintiff reported that her headaches had worsened. AR 240. On April 27, 2006, Plaintiff again reported a worsening of her headaches, pain in facial nerves and in all of her joints. AR 241. The physical exam was all within normal limits. AR 241. On June 6, 2006, Plaintiff reported a rash and difficulty sleeping. She was prescribed a trial of Prednisone, and the rash was resolved by June 8, 2006. AR 242-243. On July 6, 2006, she reported trigeminal neuralgia pain and severe phobia. AR 244. She was referred to neurologist and a psychiatrist. AR 244. She was prescribed Baclofen. AR 245.

Plaintiff was also treated by Dr. Krishnamoorthi, M.D. since July 19, 2005. On October 16, 2007, Dr. Krishnamoorthi completed a Residual Functional Capacity Questionnaire. AR 305-309. In that report, Dr. Krishnamoorthi diagnosed Plaintiff with trigeminal neuralgia and headaches. AR 305. He noted some facial drooping and swelling on the right side of Plaintiff's face. AR 305. He also noted that stress and emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. AR 306. Dr. Krishnamoorthi opined that Plaintiff could sit for two hours and stand/walk for four hours in an eight hour work day without further restriction. AR 307. He also reported that Plaintiff could lift ten pounds frequently, lift twenty pounds occasionally, and climb stairs occasionally. AR 307-308. No other postural, manipulative, visual or communicative limitations were suggested. 308. However, Dr.

Krishnamoorthi indicated Plaintiff would be absent from work three days a month due to her pain and that her pain symptoms were severe enough to interfere with her ability to maintain her attention and concentration. AR 306; 308.

On September 21, 2005, Dr. C.H. Dudley, M.D., a state agency psychiatrist, reviewed the record and found that Plaintiff did not have a severe mental impairment. AR 201-202. On September 21, 2005, Dr. F. Wilson M.D., a state agency physician also reviewed the record and opined that Plaintiff had a residual functional capacity to perform light work with sitting, standing, and walking reduced to six hours during an eight hour day. AR 203-210. Frequent reaching in all directions was precluded due to cervical pain, and it was suggested that Plaintiff avoid concentrated exposure to extreme cold and heat. AR 206-207.

On July 12, 2006, Plaintiff was evaluated by Dr. Warren D. Clift., M.D., a board certified psychiatrist and neurologist. Dr. Clift conducted a neurological and general examination. He found that the Plaintiff favored her right lower extremity on ordinary station and gait testing and displayed mild to moderate nondirectional ataxia when attempting tandem walking. AR 253. Plaintiff reported to Dr. Clift that she was unable to hop or bend her knees which he attributed to massive obesity. AR 253. Range of motion testing showed a limitation of 30-40% of neck movement in all directions. AR 253. Dr. Clift reported that Plaintiff had pain symptoms of an unknown etiology and that the pain reported was well beyond the distribution of the trigeminal nerve. AR 253. He ordered further review of Plaintiff's records. AR 253.

On October 23, 2006, Dr. Rosalinda Serrano, M.D. performed a second consultative neurological examination of Plaintiff. AR 254-258. Plaintiff told Dr. Serrano that she had neck pain, but that she could not remember when it began. AR 255. Plaintiff rated her pain as seven out of ten and that it could not be relieved by anything. AR 255. Plaintiff had not had any physical therapy or chiropractic treatments, and only took over the counter Tylenol for pain. AR 255-256. Plaintiff reported that air, wind, and cold and warm food made her symptoms worse. AR 255. Plaintiff reported that her trigeminal neuralgia was helped somewhat with Baclofen, and steroid injections provided short term relief but caused swelling and itching. AR 255. Plaintiff

complained of dizziness, depression, anxiety, and phobias of unfamiliar or close spaces. AR 256.

Upon examination, the doctor found the presence of pain and tenderness at C3-TI with negative Tinel sign. AR 257. Dr. Serrano assessed Plaintiff's functional ability as being able to sit, stand, or walk, for six hours during an eight hour day, and she was able to lift or carry up to twenty pounds frequently. AR 257. No other postural limitations were observed or suggested. AR 257. The doctor noted that reaching above the shoulder and head should be avoided because Plaintiff has to look up and extend her neck. AR 257. Additionally, Plaintiff's history with dizziness precludes climbing ladders or working with heights. AR 258.

### ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 10, 2005, and had Plaintiff suffered from severe impairments including trigeminal neuralgia, chronic neck pain, cervialgia, and obesity. AR 17. However, the ALJ determined that none of the severe impairments met or exceeded one of the listing impairments. AR 18.

Based on her review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she could not perform work requiring her to climb stairs, ladders, or scaffolds. AR 18. Although Plaintiff had no past relevant work, the ALJ found that Plaintiff had the RFC to perform jobs that exist in significant numbers in the national economy including a storage rental clerk, office help, and a survey clerk. AR 23-24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since March 10, 2005; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(c) including trigeminal neuralgia, chronic neck pain, cervialgia, and obesity; (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d), 416.925 and 416.926); (4) retained the RFC to perform light work except that Plaintiff could not perform work requiring her to climb stairs, ladders, or

scaffolds and (5) that Plaintiff was not disabled because she could perform a significant number of jobs in the national economy. AR 11-18. In doing so, the ALJ found that Plaintiff was not credible given the record as a whole.

Here, Plaintiff argues that the ALJ: 1) failed to provide clear and convincing evidence to discredit her testimony, 2) improperly rejected the opinion her treating physicians, 3) failed to recontact Plaintiff's treating physician as well as obtain a statement from a third-party, 4) and that the vocational expert deviated from the DOT without providing persuasive evidence to support the deviation. Plaintiff contends this Court should reverse and order the immediate payment of benefits. In the alternative, Plaintiff requests that the case be remanded for a new hearing.

## **DISCUSSION**

### A. *Plaintiff's Credibility*

Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting her complaints. Specifically, she contends the ALJ discounted her limitations without providing any reason other than stating that the medical evidence did not support these conclusions. In doing so, Plaintiff argues the ALJ improperly discounted Dr. Krishnamoorthi's and Dr. Gesson's opinions and ignored objective evidence in the record that supports her complaints. (Doc. 14 at 13-23.)

Defendant responds the ALJ's rejection of the doctors' opinions was proper because the treatment records failed to document sufficient objective findings to support Plaintiff's subjective claims. In particular, the medical records revealed unremarkable findings to support the frequency, extent, and duration of Plaintiff's alleged pain. Moreover, the ALJ properly considered Plaintiff's poor work history coupled with the fact that despite complaints of excruciating pain, Plaintiff only pursued a conservative treatment regimen. (Doc. 16 at 11-15).

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies

11

the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ found that Plaintiff had severe impairments including trigeminal, cervalgia neuralgia, and obesity. AR 18. When making her finding as to Plaintiff's RFC, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the residual functional capacity assessment." AR 19. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282. Although Plaintiff argues that the ALJ's identification of trigeminal neuralgia as a severe impairment constitutes objective evidence of Plaintiff's pain,

the mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d at 834. When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of the symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; [s]he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

Plaintiff argues that the ALJ's adverse credibility finding was improper because the finding was only based on a statement that the medical evidence did not support Plaintiff's allegations of pain. A review of the ALJ's decision shows that Plaintiff is mistaken. The ALJ relied on several factors to discredit Plaintiff's testimony. First, the ALJ found that Plaintiff reported having a stroke but did not provide any medical records in support of this condition. In pertinent part the ALJ noted the following:

> There is no evidence that the claimant had a stroke or any similar medical emergency. At the hearing her representative requested additional time to provide updated medical records, and time was extended for 30 days. To date, no additional or supplemental records have been received. Other than the claimant's self diagnosis, there is simply no medical evidence supporting her allegation.
> AR 19.

Second, the ALJ noted that despite Plaintiff's claims that she was experiencing severe pain all of the time, Plaintiff's treatment for trigeminal neuralgia and cervialgia was infrequent and inconsistent. AR 21; 320-322; 326-328; 343-346. This is corroborated by Plaintiff's own testimony that she saw Dr. Krishamoorthi, her treating physician only two times per month. AR 341-342. The ALJ also noted that other treating doctors had not recommended or suggested any treatment more aggressive than mild pain medications and muscle/anti-anxiety medications. AR 21-22. Indeed, at the time of the second hearing, Plaintiff testified that she was taking Baclofen, Loratadine, Meclazine, and Tylenol for pain. AR 19; 232; 319; 323; 342. Further, medical

records indicate that Plaintiff took Tylenol for pain which helped alleviate her symptoms. AR 132; 178; 249; 255; 302. Although Plaintiff argues that the judge improperly relied on this factor because she had allergic reactions to medications in the past, she did not report any allergic reaction to her current medication regimen, nor did she seek out alternative treatment or pain management therapy to alleviate her symptoms. AR 318-319; 342. "Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) citing *Johnson v. Shalala*, 60 F. 3d 1428, 1434 (9th Cir. 1995); *Tommasetti v. Astrue*, 533 F. 3d at 1039 (ALJ properly inferred that the claimant's pain was not as all-disabling as he reported in light of fact that the he did not seek an aggressive treatment program); *Meanel v. Apfel*, 172 F. 3d 1111, 1114 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant complained of intense pain but only received minimal and "conservative" treatment).

Finally, the ALJ also noted that while Dr. Gesson reported that Plaintiff was positively motivated to work, Plaintiff's work record was sparse and did not support a strong interest in working. Specifically, the ALJ noted that Plaintiff's earnings record "show[ed] no earnings reported from 1987 through 1994, then 1997 through 2001. She reported minimal earnings in one calendar quarter in 1995 and 2002, with $1,172.79 and $2,409.75 reported in 1996 and 2003 respectively." AR 23. Plaintiff's past work history is a valid consideration when evaluating credibility. *See, Thomas v. Barnhart*, 278 F. 3d 947, 959 (9th Cir. 2002) (a spotty work history with years of unemployment between jobs negatively affected a claimant's credibility regarding her inability to work). These are all clear and convincing reasons for rejecting Plaintiff's testimony.

**B.**     ***The Treating Physicians' Opinions***

Plaintiff argues that when making the adverse credibility finding, the ALJ improperly discredited Dr. Gesson's and Dr. Krishnamoorthi's opinions. Specifically, Plaintiff argues the ALJ impermissibly discounted Dr. Krishnamoorthi's limitation that Plaintiff's pain would result in her being absent from work three days a month, and that pain would interfere with her ability maintain her attention and concentration. Similarly, Plaintiff contends the ALJ did not give

adequate reasons for discrediting Dr. Gesson's opinion that Plaintiff would not be able to work and would have to go on permanent disability.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

*1. Dr. Krishnamoorthi's Opinion*

With regard to Dr. Krishnamoorthi's opinion, the ALJ noted the following:

> The undersigned gives great weight to [Dr. Krishnamoorthi's] opinion, except for the suggestion that pain and symptoms frequently interfere with attention and concentration, and that the claimant would be absent three days a month for treatment as a result of the impairment. The medical evidence does not support these conclusions.
> AR 21.

In addition to the above, the ALJ also noted that the frequency of Plaintiff's treatment was inconsistent and doctors had not suggested more aggressive treatment. AR 21-22. A review of the record supports the ALJ's finding. As noted by the ALJ, Plaintiff's physical examinations were unremarkable on multiple occasions. AR 20; 124-128; 238; 241. For example, Dr. Gupta treated Plaintiff from July 19, 2005 through September 21, 2006. 238-245. The ALJ noted that

15

although Plaintiff complained of pain and a worsening of headaches, a physical examination was all within normal limits. AR 20; 241. Additionally, the ALJ noted that although Dr. Clift found that Plaintiff was experiencing pain, the symptoms were of an unknown etiology and he ordered further testing. AR 20; 253. Thus, the ALJ identified specific reasons for discounting Dr. Krishnamoorthi's limitations. *Batson v. Commission of Soc. Sec. Adm.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ correctly gave treating physician's opinion minimal weight in light of lack of supporting medical evidence). Moreover, even Dr. Krishnamoorthi did not prescribe aggressive treatment consistent with Plaintiff's complaints. AR 22. These factors constitute specific and legitimate reasons for rejecting Dr. Krishnamoorthi's limitations. *See, Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001) (ALJ properly discounted a physician's opinion where the clinical findings were unremarkable and he prescribed conservative treatment).

*2. Dr. Gesson's Opinion*

Plaintiff also argues the ALJ was required to accept Dr. Gesson's opinion that she was disabled. However, Dr. Gesson's disability opinion is not a medical opinion and is not entitled to any weight. Whether a claimant is disabled is an administrative, not a medical finding that is reserved for the commissioner to make. 20 C.F.R. § 416.927(e). "A statement by a medical source that your are disabled or unable to work does not mean that we will determine that you are disabled." *See*, 20 C.F.R. § 416.927(e)(1). Thus, Dr. Gesson's opinion regarding Plaintiff's disability status is not entitled to any special significance and the ALJ was under no obligation to address it. 20 C.F.R. 416.927(e)(3). Moreover, it is clear that the ALJ considered Dr. Gesson's findings as a history of Dr. Gesson's contacts with the Plaintiff were clearly outlined in the ALJ's decision. AR 20. Although Plaintiff argues that Dr. Gesson's opinion establishes presumptive disability pursuant to the Commissioner's listing, she did not explain which listing or explain the reasons supporting this argument. Therefore, the Court rejects this argument as it is too underdeveloped to assess its validity. *See*, *Hibbs v. Department of Human Resources*, 273 F. 3d 844, 873 n. 34 (9th Cir. 2001).

The Court is also unpersuaded by Plaintiff's argument that the ALJ improperly rejected Plaintiff's psychological condition because Dr. Gesson had diagnosed her with depression not

16

otherwise specified and generalized anxiety disorder. The ALJ noted the following with regard to Plaintiff's psychological condition:

> None of claimant's psychological symptoms have been confirmed by an examining doctor, only acceptance of her reported symptoms. There are no independent third party observations to support her allegations, and no clinical testing or evaluation that suggests an impairment consistent with her statement and testimony as to her symptoms. AR 22.

This finding is supported by the medical record as several psychological professionals evaluated Plaintiff and found no significant limitations or severe mental impairment. AR 133; 135-139; 201-202. Moreover, the ALJ specifically noted that Plaintiff reported difficulty with situational anxiety but no examining evaluator reported any difficulty. AR 23; 146.

Plaintiff also argues that the ALJ was required to contact Dr. Gesson or other third parties to further develop the record. In general it is the duty of the claimant to prove to the ALJ that she is disabled. 20 C.F.R. § 404.1512(a). To this end, the claimant must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on her ability to work. *Id.* The ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e); 404.1527(c)(3), *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001). However, this duty applies only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001); *Bayliss v. Barnhart*, 427 F. 3d 1211 1217 (9th Cir. 2005) (An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make disability determination.) Here, the record was not ambiguous nor inadequate to allow the ALJ to evaluate the evidence as numerous doctors treated and evaluated Plaintiff and it was clear that the ALJ considered the medical record. Moreover, it was Plaintiff's duty to prove she is disabled. If she chose not to submit third party testimony, the ALJ was under no obligation to require additional evidence if the record was sufficient to make a finding.

### 3. Dr. Serrano's Opinion

Plaintiff also argues that the ALJ impermissibly discounted Dr. Serrano's opinion that Plaintiff was limited in her ability to look up and reach above her shoulder and head. However, the ALJ explicitly noted that she gave considerable weight to Dr. Serrano's opinion except for this limitation because it was not supported by Dr. Krishnamoorthi's assessment. AR 21. This is a specific and legitimate reason for rejecting this limitation. *See, Magallanes v. Bowen*, 881 F. 2d 747, 753 (9th Cir. 1987) (when weighing a medical opinion, the ALJ need not necessarily agree with everything contained in that opinion and can consider some portions less significant than others when evaluated against the other evidence in the record).

### C. Deviation from the DOT

Finally, Plaintiff argues that the ALJ erred by relying on the testimony of the vocational expert which constituted a deviation from the DOT without persuasive evidence to support the deviation. Defendant argues that the ALJ's reliance on the VE's expertise was not proper because the VE relied on his years of experience and data from the U.S. Census Bureau.

SSR 00-4p states that generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. Where there is an apparent conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. *See* SSR 00-4p. The ALJ may rely on the testimony of a VE over that of the DOT by determining that the explanation given by the VE is reasonable and provides a basis for doing so. *Id.*

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* Where the ALJ fails to ask the VE is the positions are consistent with the DOT, the Court is unable to determine whether substantial evidence supports the ALJ's finding at step five. *Id.*

When there is an apparent unresolved conflict, the ALJ must inquire, on the record, about the inconsistency, and must obtain a reasonable explanation for the conflict. SSR 00-4p, 2000 WL 1898704, at *2. The failure to do so constitutes procedural error. *Massachi*, 486 F.3d 1149, 1153-54 & n. 19. Such error is harmless, however, if there was no conflict or if the VE provided sufficient support for his or her conclusion so as to justify any potential conflicts. *Id.* at 1154, n. 19.

At the hearing, both the ALJ and the VE acknowledged the deviation. AR 352. With regard to the deviation, the ALJ noted the following in her decision:

> If claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of the these factors the individual would be able to perform the requirements of representative occupations within the state economy such as a storage rental clerk (295.367-026, light unskilled svp2, 10,000 jobs) office help (239.567-012, light, unskilled, svp2, 26,000 jobs) and survey clerk (205.367-054, light, unskilled, spv2, 8000). The vocational expert's testimony was consistent with the general job descriptions contained within the Dictionary of Occupational Titles. He deviated from the Dictionary of Occupational Titles in providing specific descriptions of jobs and the number of jobs available. The job storage clerk falls under the general classification of counter and rental clerk, and the job survey clerk falls under the classification of interviewers (except eligibility and loan interviewers). Based on his knowledge and experience of over 20 years helping people find employment, he believed the jobs described best aligned with the claimant's residual capacity. The numbers of jobs were obtained from the U.S Census Bureau.
> AR 24.

Based on this reasoning, the ALJ found that Plaintiff had the capability to work in the national economy. AR 24. Here, the Court finds that the VE's twenty years of experience, as well as data collected by the U.S. Census Bureau constitutes persuasive evidence of the deviation *Bayliss v. Barnhart*, 427 F. 3d 1211 (9th Cir. 2005)( "an ALJ may take administrative notice of any reliable job information, including information provided by the VE" because the "VE's recognized expertise provides the necessary foundation for his or her testimony and "no additional foundation is required").

///

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Elma Ann Buchanan.

IT IS SO ORDERED.

Dated: **February 18, 2010**  **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE